JOHN MCLAUGHLIN *vs.* JESSE NASH.

I℉ fixtures are added to real estate by one who is in possession thereof under a bond for a deed, without paying rent, his right to remove them, after breach of the bond, must be determined by the rule which prevails as between vendor and purchaser, and not that which prevails as between landlord and tenant.

Accordingly, under such circumstances, a trip-hammer firmly attached to a block set in the ground; the blower of a forge; a force-pump and its pipes, for raising water on the premises; and shafting fastened to the building by screws and bolts, cannot be removed after breach of the bond. But a steam-engine and boiler, which are portable and can be removed without removing brickwork; a planing machine and anvils not fastened to the buildings; vices fastened to a work-bench merely by screws and bolts; a grindstone on a movable frame, and an emery machine fastened to the floor with bolts, and both capable of removal without displacing or materially injuring any part of the building or land and of being used elsewhere as well as on the premises, may be removed after breach of the bond.

BILL IN EQUITY for an account of a partnership formed between the parties on the 1st of May 1860 for the purpose of carrying on the business of tool-making, and dissolved on the 17th of December 1861.

Upon the report of a master in chancery, to whom the case had been referred to state the account, the question was reserved for the determination of the full court, whether any of the following articles, the value of which was found by the master, were partnership property, under the circumstances hereinafter stated, namely, " engine and boiler, $375; trip-hammer, $100; shafting and belting, $100; emery machine, $40; blower, $50; force-pump and piping, $40; bench tools, $10; vices, $40; planing machine, $275; forge tools, $100; stock of iron and steel, $150; grinding stone and shaft, $30."

On the 1st of December 1859 Ira Gerry executed to the plaintiff a bond for the conveyance of a lot of land in Stoneham, with the buildings thereon, upon his paying $50 semi-annually for four years and a half, and $1750 at the end of five years, with interest, and meanwhile paying all taxes levied on the premises, and a sufficient sum of money to keep the build-ings insured against fire in the sum of $1100; the obligee " to **have** the privilege of occupying and improving the **premises**

without further charge " until the conveyance to him, or default in payment of the price. Gerry erected a shop on the premises, for which the plaintiff furnished some materials and labor. The articles in question were put into the shop by the plaintiff. When the partnership was formed, the defendant purchased an undivided half of them, and the firm agreed to pay to the plain-tiff a stipulated rent for the use of the shop. In the summer of 1861 the condition of the bond was broken, and the plaintiff informed Gerry that he might collect the rent of the premises. Gerry never obtained the keys of the shop ; but on the 20th of December 1861 let the shop to the defendant, " claiming all that was fixed to the building as belonging to the real estate."

" The engine and boiler were set on brickwork, which was on the ground. The brickwork was built up to the fireplace, and under the boiler and engine, and they rested on this brickwork. The boiler was raised up, the brickwork built up, and the boiler let down upon it, where it rested. There was no brickwork around it except as above stated. The engine and boiler could be removed without removing the bricks previously. The engine was of eight horse power. The engine and boiler were portable and in their own frames. It was formerly used on a wharf, and was originally on trucks, which were taken off, and kept on the premises. One half of the shop had no floor, except cement, upon the ground. The trip-hammer was on a block of wood, set in the ground, with a stone block for the hammer to rest and fall on ; the other end was set in an iron frame, fastened with bolts to said block of wood, set in the ground. The shafting was fastened up with screws and bolts. The emery machine was set on the floor, and fastened with bolts. The blower was set and fastened in the same manner. The force-pump was fastened with screws to the side of the building, and operated by the engine. The vices were fastened to the work-bench with screws and bolts. The planing machine was set on the floor; it weighed a ton, and had no fastening. The largest anvil was set on a stone block, with pins running up through, for it to set on ; it could be lifted off; the others were set on wooden blocks, with spikes at the sides, to keep

them from jumping off; they could be and were frequently taken off. The grinding stone was on a movable frame."

*J. P. Converse*, for the plaintiff.

*W. P. Harding*, for the defendant.

GRAY, J. The articles which the defendant contends were fixtures, annexed to the freehold, and therefore not to be accounted for as personal property of the partnership, were put by the plaintiff into a building erected by Gerry, the owner of the land, of which the plaintiff was in possession under a bond from Gerry to convey it to him upon the payment of a price therein stipulated. The plaintiff had not the same right to remove fixtures annexed by him to the land so occupied by him, without paying rent to the owner, under a contract for its purchase, as an ordinary tenant would have against his landlord. *Hutchins* v. *Shaw*, 6 Cush. 58. *Murphy* v. *Marland*, 8 Cush. 578. *King* v. *Johnson*, 7 Gray, 239. His rights in this respect were no greater than those of a vendor or mortgagor against his vendee or mortgagee. A mortgage passes even trade fixtures, annexed to the freehold by the mortgagor, for the more convenient use and improvement of the premises, whether before or after the mortgage. *Winslow* v. *Merchants' Ins. Co.* 4 Met. 306. *Butler* v. *Page*, 7 Met. 42. *Walmsley* v. *Milne*, 7 C. B. (N. S.) 115. In ascertaining what are fixtures, regard is to be had to the object, the effect, and the mode of annexation.

The trip-hammer, firmly attached to a block set in the ground, the blower of the forge, the force-pump and its pipes for raising water on the premises, and the shafting fastened to the building by screws and bolts, having been annexed by the plaintiff to the freehold, and specially adapted to be used in connection therewith, became part of it, and could not be severed again without the consent of the owner of the land. *Winslow* v. *Merchants' Ins. Co.*, above cited. *Richardson* v. *Copeland*, 6 Gray, 536. *The Queen* v. *Lee*, ᵀ aw Rep. 1 Q. B. 241.

But, under the circumstances stated in the master's report, the engine and boiler, which are expressly found to have been "portable and in their own frames," the planing machine, and the anvils, all of which simply rested on the floor or ground,

**without** being fastened to the land; together with the forge tools and bench tools, the stock of iron and steel, the vices merely affixed by screws to the work-bench; the grindstone in a movable frame, and the emery machine, both of inconsiderable size, more connected in use with the engine and boiler which were not fixtures than with any of the articles which were, and capable of removal without displacing or materially injuring any part of the building or land, and of being used elsewhere as well as on the premises; never lost the character of chattels, and must be accounted for as assets of the partnership. *Gale* v. *Ward*, 14 Mass. 352. `Winslow* v. *Merchants' Ins. Co.* 4 Met. 315. *Park* v. *Baker*, 7 Allen, 78. *Horn* v. *Baker*, 9 East, 215. *Hellawell* v. *Eastwood*, 6 Exch. 312, 313. *Cresson* v. *Stout*, 17 Johns. 116. *Murdock* v. *Gifford*, 18 N. Y. 28.

The report of the master is to be recommitted to re-state the account in conformity with this opinion, unless the parties agree. *Order accordingly.*