26   203
134a  490

## JOHN SULLIVAN, RESPONDENT, v. JAMES TOOLE, APPELLANT.

*Fixtures — hop poles upon a farm are covered by a mortgage of the land — the lien of the mortgagee is superior to that of one taking a chattel mortgage of the hop poles for an antecedent consideration.*

Hop poles used in the raising of hops upon a farm are covered by a mortgage of the land, whether they are upon the farm at the time of. the giving of the mortgage or are subsequently brought thereon, and the lien of the mortgagee upon them is superior to the title acquired by one who, with knowledge of the prior mortgage and of the mortgagor's insolvency, takes a chattel mortgage upon the poles immediately after their removal from the farm, to secure himself from liability for prior indorsements made by him for the accommodation of the mortgagor.

APPEAL from a judgment of the County Court of Oneida county, affirming a judgment of a justice of the peace in favor of the plaintiff for $107.82.

*E. H. Lamb*, for the appellant.

*H. T. Utley*, for the respondent.

HARDIN, J. :

Patrick Downey, on the 19th day of October, 1878, executed and delivered to the plaintiff a chattel mortgage to secure the plaintiff against liability by reason of having indorsed a note of ninety-two dollars, dated April 5, 1878, made by Downey and held by one Julius Day. Which chattel mortgage covered 100 hop poles theretofore used " in raising hops on a farm then in the possession of Downey."

The chattel mortgage was filed in the town clerk's office of Marshall, that being the town where the mortgagor resided.

When the plaintiff took his mortgage he *knew* the poles had just been taken from the farm, and that the farm was incumbered by a

real estate mortgage held by Toole, the defendant, and that Downey was insolvent, and that as he phrases it, that Downey "was skimming off all the poles."

Defendant commenced, October 17, 1878, a foreclosure of his mortgage upon the farm, and recovered a judgment November 11, 1878, declaring there was $3,459.41 unpaid upon it, and the farm was sold upon the judgment for $750 (subject to a prior mortgage), and there remained a deficiency upon such sale of $2,768.05.

After confirmation of this sale and judgment entered for such deficiency against Downey in favor of this defendant, an execution was issued upon the judgment and the sheriff levied upon and sold the hop poles in question, and the defendant became the purchaser at such sale and thereafter took possession of the hop poles by returning them to the farm from which they were taken by Downey.

Plaintiff brought this action for the poles and recovered before the justice for them. Was such recovery right? Under the circumstances surrounding the hop poles they were *part of the real estate* covered by the mortgage held by defendant against Downey. (*Bishop* v. *Bishop*, 1 Kernan, 123; *Noyes* v. *Terry*, 1 Lans., 222; *Goodrich* v. *Jones*, 2 Hill, 142; *Walker* v. *Sherman*, 20 Wend., 655.) Downey, therefore, as against the defendant's mortgage, had no right to remove them from the farm. (1 Jones on Mort., § 428; Thomas on Mort., 46, and cases cited.) And as to the mortgagor, or those standing in his shoes, it makes no difference whether the poles were upon the farm at the time the real estate mortgage was given or were placed there *afterwards*. (*Gardiner* v. *Finley*, 19 Barb., 317; *Rice* v. *Dewey*, 54 Barb., 455; 1 Jones on Mort., §§ 435, 436.) Plaintiff having notice of the mortgage held by defendant when he took his chattel mortgage for an antecedent indorsement, parting with no fresh consideration, is in no better position as against the defendant in respect to the poles than Downey, whose rights he acquired. (*Van Pelt* v. *McGraw*, 4 Comst., 110; *Scribner* v. *Beach*, 4 Denio, 451.)

This case is distinguishable from *Wilson* v. *Maltby* (59 N. Y., 129), as there the defendant's title to the severed property was held not affected by the real estate mortgage, because when they contracted for it and severed it they did not know of the mortgage or intend to injure the plaintiff.

To the extent of the lien held by the defendant upon the real estate which remained unpaid by the foreclosure, he had an interest in the poles paramount and prior to any interest acquired by the plaintiff. (*Trustees of Union College* v. *Wheeler*, 61 N. Y., 89; *Odell* v. *Montross*, 68 id., 504.)

Defendant could maintain an action on the case against Downey for wrongfully severing the poles. (*Van Pelt* v. *McGraw*, 4 Comst., 110; *Wilson* v. *Maltby*, 59 N. Y., 126; *Lafflin* v. *Griffith*, 35. Barb., 58.)

The extent of the injury to his security would be the limit of his. right of recovery.

*Bank of Auburn* v. *Roberts* (45 Barb., 421); *Johnson* v. *White* (11 id., 194), cited by the learned counsel for the respondent, does. not aid him, as there it was held that the injunction against removing timber should be limited to that not cut, *unless a special* case was made to show irreparable injury, and following the rule stated by Chancellor KENT in *Watson* v. *Hunter* (5 Johns. Ch., 169), it was not denied in either case that a liability attached for severing the fixtures. Indeed, the chancellor clearly states that trover is the proper remedy in cases like the one before him, where the plaintiff had the legal title as trustee to secure a debt.

Nor does our rule in this State which considers a mortgage of real estate as creating a lien, rather than vesting a title, change the question here involved. (61 N. Y., 89.)

We think the defendant established a defense and that a judgment should have been given for him by the justice.

Judgment of the County Court of Oneida county and that of the justice reversed.

SMITH, P. J., and DWIGHT, J., concurred.

So ordered.