ALEXANDER McFADDEN, Appellant, *v.* VAN BUREN ALLEN
et al., Respondents.

In determining as between mortgagor and mortgagee whether articles on
the mortgaged premises at the time of, or placed thereon by the mort-
gagor, after the execution of the mortgage are fixtures, the same rules
apply as between grantor and grantee.

So, also, the same rules apply to articles annexed to the premises by a sub-
sequent grantee or a vendee in possession under an executory contract
to purchase.

The lien of a mortgagee, therefore, covers all that was realty when he
accepted the security and all accessions to the realty, except when by
a valid agreement to which he was a party, the character of chattels
is impressed upon them.

In an action to recover for the alleged conversion of certain structures and
machinery the following facts appeared : In 1878, McF., the father of
plaintiff, executed to W. a mortgage on certain real estate owned by
him.   Plaintiff went into possession under an oral agreement, as alleged
by him, that he was to have the use of the place, and when he paid the
mortgage, a deed thereof; that he was to make such improvements as he
chose, with the right to remove them in case he failed to pay the mort-
gage.   It did not appear that the mortgagee in any manner assented to
or knew of this agreement.   While so in possession plaintiff erected on the
premises the structures and placed thereon the machinery in question, and
he and his father executed another mortgage on the premises.   In an
action to foreclose the first mortgage plaintiff and the second mortgagee
were made parties defendant, the complaint alleging that they had, or
claimed some interest in or lien upon said premises, which, if any,
accrued subsequent to the lien of the mortgage.   None of the defend-
ants appearing, judgment of foreclosure and sale was entered by default,
the premises sold, and by a writ of assistance, plaintiff was ejected
therefrom.   *Held*, that by virtue of the oral agreement, plaintiff became
beneficial owner, subject to the mortgage, and all improvements made
by him that were in their character accessions to the realty were subject
to the lien of the mortgage, also (FOLLETT, Ch. J., BROWN and VANN,
JJ., concurring), that if plaintiff intended to assert title to the fixtures
he was bound to do so in the foreclosure suit and was estopped by his
default therein from making such a claim as against the purchaser or
his grantee.

*Sheldon* v. *Edwards* (35 N. Y. 279); *Tifft* v. *Horton* (53 id. 377); *G. M. M.
Co.* v. *Quinn* (76 id. 23); *Tyson* v. *Post* (108 id. 217), distinguished.

Reported below, 50 Hun, 361.

(Argued June 13, 1892; decided October 1, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made November 20, 1888, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Circuit.

This was an action to recover for the alleged conversion of certain structures, machinery and other articles placed upon real estate by plaintiff.

The facts, so far as material, are stated in the opinion of Follett, Ch. J.

*C. A. Kellogg* for appellant.

*John C. Keeler* for respondents.

Follett, Ch. J. In determining as between mortgagor and mortgagee, whether articles are or are not fixtures, the same rules prevail which are applicable to cases arising between grantors and grantees. (*Snedeker* v. *Warring,* 12 N. Y. 170; *Gardner* v. *Finley,* 19 Barb. 317; *Laflin* v. *Griffiths,* 35 id. 58; *Robinson* v. *Preswick,* 3 Edw. Ch. 246; *Main* v. *Schwarzwaelder,* 4 E. D. Smith, 273; 1 Dart V. and P. [6th ed.] 607; 1 Jones Mort., sec. 428.) And as between mortgagor and mortgagee the same rules are applicable to articles placed on the mortgaged premises by the mortgagor after the execution of the mortgage. (*Gardner* v. *Finley,* 19 Barb. 317; *Rice* v. *Dewey,* 54 id. 455, 472; *Sullivan* v. *Toole,* 26 Hun, 203; *Walmsley* v. *Milne,* 7 C. B. [N. S.] 115, 135; *Winslow* v. *Merchants' Ins. Co.,* 4 Met. 306; *Ex parte Belcher,* 4 D. & C. 703; *Ex parte Reynal,* 2 M. D. & De Gex, 443; 1 Jones Mort., § 436; 1 Sug. Vendors [7th Am. ed.] 37, note 1; *Phœnix Mills* v. *Miller,* 4 N. Y. S. R. 787.) In the case last cited the rule was well stated, as follows : " A mortgagee of real property is entitled to have his lien respected as to all that was realty when he accepted the security; also as to all accession to the realty, save, perhaps, when the accession is made under an agreement with the party that its purchase price or expense shall be secured and is secured by a lien thereon."

The same rules apply to articles annexed to the premises by a subsequent grantee or vendee in possession under an executory contract to purchase. (*Eastman* v. *Foster*, 8 Met. 19; *Lynde* v. *Rowe*, 12 Allen, 100; *Glidden* v. *Bennett*, 43 N. H. 306; *Cooper* v. *Adams*, 6 Cush. 87; *Ogden* v. *Stock*, 34 Ill. 522; *Poor* v. *Oakman*, 104 Mass. 309, 318; 1 Wash. R. P., page 2, par. 4.)

Bearing these general rules in mind, it remains to apply them to the particular facts involved in the case at bar, which briefly are as follows: Jeremiah McFadden was the owner in fee of eighteen acres of land, upon which was a mill-pond, saw-mill, dwelling and barn. December 11, 1878, he mortgaged the property to Orson Wallace to secure the payment of $400 five years thereafter, with semi-annual interest, which mortgage was duly recorded September 2, 1879. The plaintiff, a son of Jeremiah McFadden, occupied the premises from December, 1879, until May 21, 1887, when he was ejected by a writ of assistance issued in and in pursuance of a sale made by virtue of a judgment foreclosing said mortgage.

The plaintiff testified that it was orally agreed between himself and his father that the former should take possession of the property, have the use of it, and when he had paid the mortgage he was to have a deed. The son was to make such improvements as he chose, with the right of removing them if he failed to pay the mortgage and acquire the property. Under this contract the son occupied the property for nearly eight years, and added to it some new buildings and machinery. Under this contract the plaintiff became the equitable owner of eighteen acres, and on paying the mortgage could have compelled a conveyance of the legal title by his father. (*Freeman* v. *Freeman*, 43 N. Y. 34.) The plaintiff could have devised the land, and, had he died intestate, his interest held under this oral contract would have descended to his heirs subject to the dower right of his widow. (*Cogswell* v. *Cogswell*, 2 Edw. Ch. 231–239; *Griffith* v. *Beecher*, 10 Barb. 432; *Warren* v. *Fenn*, 28 id. 333; Dayton's Surrogate [3d ed.], 630.) While in possession of the eighteen acres under this

arrangement with the father, the plaintiff and his father, with their wives, executed a mortgage on the eighteen acres and another parcel of thirty-seven acres June 16, 1885, to secure $634.26 to Francis L. and Anna M. Harrison, who were made defendants in the action to foreclose the first mortgage, and they became the purchasers at the sale and afterward conveyed to the defendant. It is not asserted that Wallace, the first mortgagee, or the Misses Harrison had notice, actual or constructive, of the alleged contract between the father and the son. The son, by the execution of the mortgage, treated the eighteen acres as his own, and the buildings and the machinery as a part of it, and he cannot now be permitted to assert as against the Misses Harrison or the defendant, their grantee, that the buildings and machinery were not fixtures.

The plaintiff, his wife, Jeremiah McFadden, his wife, Francis L. Harrison and Anna M. Harrison were defendants in the action brought by Orson Wallace to foreclose his mortgage, and were personally served with the summons and complaint in that action. The complaint contained this allegation: "The plaintiff further shows, upon information and belief, that Alexander McFadden, Lunetta McFadden, Francis L. Harrison, Anna M. Harrison and Truman Jones have, or claim to have, some interest in or lien upon said mortgaged premises, or some part thereof, which interest or lien, if any, has accrued subsequently to the lien of said mortgagee."

None of said defendants appeared in the action and a judgment of foreclosure was recovered by default, pursuant to which the sale before mentioned was made, and the writ of assistance was issued.

The plaintiff's rights in the eighteen acres were subsequent in time to the mortgage given to and foreclosed by Wallace, which was alleged to be a lien on the property, prior in law and equity to the rights of the plaintiff in this, and the defendant in the foreclosure action. If the plaintiff intended to assert title to the fixtures he was bound to do it in that action and he could not lie by until a judgment had been

entered declaring his rights inferior to the mortgage, and then assert as against the purchaser under the judgment or his grantee that his claim to the buildings and machinery was prior to the lien of the mortgage. On the trial of this action, the plaintiff testified that July 7, 1886, he " stated in writing to the Ames Engine Manufacturing Co. for the purpose of obtaining credit that he owned in fee the fifty-five acres of land covered by said two mortgages, and that March 3, 1887, he wrote to the agents of the Misses Harrison (the second mortgagees) that he had paid his father for the eighteen acres and held a deed thereof subject to the mortgage.

This statement was made for the purpose of obtaining a further loan from them. This evidence is entirely inconsistent with the plaintiff's present claim that he was merely the occupant of the premises, with the right to remove betterments, instead of the equitable owner with the right to have the legal title upon the payment of the Wallace mortgage; the plaintiff testified that he was not a tenant of his father, and paid no rent. His position was that of a beneficial owner, subject to the mortgage, and all improvements which he made upon the property were subject to the rules of law applicable to mortgagors and mortgagees.

As an authority for the position that the agreement between the father and son impressed the character of chattels upon the buildings and machinery, we are referred to the case of *Tyson* v. *Post* (108 N. Y. 217); an examination of the record in that case shows that the owner of the premises conveyed them for $70,000, of which $10,000 was paid down and $60,000 was secured to be paid by the grantee to the grantors by two mortgages on the premises. Post paid to the grantors $6,200 of the $10,000, and then took a deed of the premises from the first grantee, it being orally agreed between him, the mortgagees and Post that he might remove the railway and machinery whenever he chose. This was held sufficient as between the mortgagees and Post to change the railway and machinery, which were immovables or fixtures, into movables or personal chattels, and relieve them from the lien of the mortgages.

In the case at bar, if the mortgagees and the owners of the fee had agreed with the plaintiff upon a sufficient consideration that he might remove the buildings and machinery, then they, as between the parties to the agreement, would have ceased to be fixtures, would have become movables and relieved from the lien of the mortgage. But the mortgagees in the case before us were not parties to the alleged agreement between the father and son who could not by an agreement between themselves affect the lien of the mortgages or the rights of the holder of them.

The judgment should be affirmed with costs.

Bradley, J. The mortgage, through the foreclosure of which the defendants derived their title, was prior to the agreement between the mortgagor and the plaintiff. The title taken by the foreclosure vested by relation as of the time mortgage was made. (*Rector, etc.,* v. *Mack,* 93 N. Y. 488; *Batterman* v. *Albright,* 122 id. 484.) It does not appear that the mortgagee in any manner assented to such agreement.

In *Sheldon* v. *Edwards* (35 N. Y. 279) the arrangement that the property there in question should be treated as personal was made between the mortgagor and mortgagee.

In *Tifft* v. *Horton* (55 N. Y. 377) there was a stipulation of the mortgagee made before the sale that the legal rights of the plaintiff should not be changed by the foreclosure sale.

In *Globe M. M. Co.* v. *Quinn* (76 N. Y. 23) the plaintiff was assignee of lease of the premises made prior to the mortgage, and in *Tyson* v. *Post* (108 N. Y. 217) the mortgagee was a party to the agreement that the property in controversy there should remain personal.

I concur in affirmance.

Brown and Vann, JJ., concur with Follett, Ch. J., Haight, J., concurs with Bradley, J. Parker, J., dissents, and Landon, J., does not sit.

Judgment affirmed.